at all. Arguments not to exceed 15 minutes per side. And Mr. P. Baisweiss for the appellant. You may proceed. Good morning to everybody here and, of course, joining us telephonically. My name is John P. Baisweiss Jr. I'm an assistant director of law with the city of Cleveland. I'm here on behalf of appellants Kazimer and Krasan. I'd like to reserve three minutes for rebuttal. If I may, to the panel, what we have here is a qualified immunity case and it is very clearly, and I think there's no dispute here, this is a mistake of fact case. Which, of course, are mistakes of law, mistakes of fact, and mistakes based on a mixture of law and fact. That's Pearson v. Callahan. And also, I think it's important to remember that qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. That's Malley v. Briggs from the United States Supreme Court. Why isn't it also a question of fact case? Because this is a matter about what Officer Krasan knew or reasonably should have known at the time, which is Fox v. De Soto. That is the standard we have to look at here. Officer Kazimer was very clear in what he believed was going on and why he did what he did. I'll point out also, and I did it in the briefing, that the first neutral party who looked at this case, which was a magistrate judge, Judge McCarr, actually, in his opinion and order, he recommended granting summary judgment to the defendants, my client's appellants, on all claims. And then Judge Wells reversed that in part and accepted it in part. What Officer Kazimer was presented with on that day, and again, we all now know that Juan Ortiz was a completely innocent person. There's no dispute of that now. But at the courts have enumerated three important factors for us to look at when we're looking at use of force. They are non-exhaustive, but I think it is important to point out because the courts have decided that these are important enough to enumerate. The first is the severity of the crime at issue. The second is whether or not the suspect poses a danger to the public or the officers. And the third is whether or not the suspect is resisting or trying to evade by flight. Is there any question of fact here as far as the large disparity in size between at least the officer that was holding him and this kid? No, Your Honor. I mean, the officer is the size he is and the kid is the size he is. I mean, they didn't change sizes since that day, but at the time... Maybe that was not the most artful way to phrase the question, but at least the picture that's painted out for us here is it's a pretty big cop and it's a pretty small scrawny kid. Well, Your Honor, I mean, he's not some giant cop. He's maybe my size, maybe a little bit shorter. He's not a huge person. It's not like it was LeBron James running him down. And yes, Juan Ortiz is a smaller person, but you have to bear in mind that what Officer Kazimer was responding to was an armed robbery where the suspect used a gun. So when he, in good faith, believed that this person could be the suspect, what he thought he was pursuing was a person who may be armed. So let's assume that there's no problem with coming up to the kid who apparently has got his arms wrapped around his mother in a parking lot, right? Well, first, Your Honor, what happens is he flees. Now, that is important. Officer Kazimer didn't come upon a scene with a... I get to ask the question. Let's assume that there's no problem with him coming up to the kid who's got his arms wrapped around his mother in the parking lot. I'm fully aware because I've read the record that he had, that that was after he had run from the police. I got that. So let's assume that everything you say justifies the initial encounter. That's not really what this case is about as I read it. This case is about what the police officer did after that and whether the actions and the length of time was appropriate or inappropriate in this case. So he allegedly slams him against the car. Now, that's a pejorative phrase. You can't dispute that he slammed against the car for purposes of this interlocutory appeal, right? Correct. So you admit that? For purposes of this appeal, correct. And then it's claimed that he holds him against this car by putting his body weight against him and allegedly a hot car in the summer for a period of 15 minutes. You can't dispute that either, right? I believe for the interlocutory appeal, 15 minutes is where we can't dispute, yes. Now, in the meantime, the mother and others are saying this is a kid with special needs. He's got Down syndrome. He didn't do it. And they're trying to explain and the officer is cursing at the crowd. So you can't dispute that either, right? Yes, Your Honor. I think it's a little more, I think there's more to it, more context to it. But in terms of what you said generally, yes, I think we have to accept those things for the purposes of qualified immunity. So what case do you have that either says that that action is appropriate or putting it in the converse way about clearly established? What do you have that suggests that it was unclear whether he could slam him up against a hot car and hold him there for 15 minutes? It just seems so totally unnecessary under the context of the case and the way in which it's presented to us. Well, I think that the way you're looking at it, Your Honor, with all due respect, is with 20-20 hindsight there. At the time that this whole happened... Your client admits that he had capitulated, he'd surrendered. Well, there's context to that. And I included that in my brief. My client admits that he did make an action that appeared like he was surrendering. However, in his experience, and I'm familiar because I have other cases that are like this, that a fleeing suspect sometimes will act as if they're surrendering to try to get an officer off guard and then attempt to flee. In fact, on Friday, I took a... So I got that, but that doesn't mean you slam someone against the car. It means... You can still put handcuffs on, you can still do what you need to do, but you don't slam the person against the car. There's no, I don't see that. Well, Your Honor, what happened there is in that moment where he may have started to surrender and Officer Kazimer didn't believe it, is he made a split-second judgment. And so in that split-second judgment, what he did was he slammed him against the car in an attempt to effectuate this arrest from someone who had just been fleeing. And the courts, and this is Birch v. Kieffer, you have to give great deference to an officer's on-the-spot judgment. And this was just an instantaneous thing. This was adrenaline pumping, he believes he may be chasing someone who's armed and just robbed somebody. Yeah, great jury trial argument. I think that might be how you could win the case at a jury, in front of a jury. But to say that this argument means he doesn't even get to go to a jury, it's hard for me to understand. Well, Your Honor, all of these quotes I'm coming at you with from cases are all in the context of qualified immunity. These are the things that have to be looked at by a court before it gets to trial. And I think that based on what we have here, this case shouldn't get to trial. I think that Officer Casimir should be... The evidence is he's a small kid. The evidence is everybody's telling him you've got the wrong person, this kid's got a disability. The evidence is he slams him, and if he thinks he's faking, but he still has to keep him there for 15 minutes? I mean, that doesn't get to a jury trial. Your Honor, a whole number of people were surrounding him, screaming at him in Spanish and English. There was no backup there, and at most one other officer showed up. It's not unusual for people who know a suspect to say that that suspect is innocent. There's nothing pointed to in the law that I'm aware of that says someone who has a disability is incapable of committing a crime. If you look at Officer Casimir's deposition, he said he wasn't even aware that there was any sort of disability with Juan until after he released him. No, we don't decide this on his deposition, right? I mean, now you're not acknowledging the facts against you, right? I appreciate that, Your Honor, but I think it is important that we have to look at it from the officer's perspective, and I grant you that these facts do come out against my client in the 2020 hindsight, but that's not what we look at at this qualified immunity stage. We look at it from the perception of what the officer knew or reasonably could have known at the time. Let's stay with that approach. We all agree with that. Generally speaking, we see police officers putting people up against cars by asking them or telling them to put their hands against the car, and that's how they frisk them, and then they put their hands behind their back. When they're resisting, then you oftentimes see force being applied that sometimes means their face ends up on the hood of the car or whatever. We see lots of those cases. You've probably seen that, but I'm trying to remember whether I've ever seen a case where somebody was, at least from what I can tell, completely submissive that then got slammed up against the car. So I guess the first part of this question is, are there any cases that you can think of where that's happened factually? Not that I can recall offhand, no. Now that may support your not clearly established argument, so I understand that completely, but what are we to do, what are we to make of the fact that this guy goes right from grabbing the kid to slamming him up against the car, do not pass go, and there don't seem to have been any objective reasons, either at the time or in hindsight, why he would have or should have done that? Well, Your Honor, I'm going to just disagree. I think there were objective reasons at the time. We had somebody... Give me one reason why he slams him against the car. He had been fleeing. He had just been fleeing. There's no way to know what this person is going to do next. He believed that he was chasing what could be an armed robber. There's no way to know if he may produce a weapon. So the rule that you would have us follow is if you're fleeing and apprehended, you can be slammed up against the car. Well, I don't think it's that simple, Your Honor. I mean, the courts need to take a reasonably particularized look at each case, and not simply if you're fleeing. If you're fleeing from, say, jaywalking, then no, not necessarily. But this officer was searching for someone who had just committed an armed robbery, okay, with a gun. So that's what this officer believes he's chasing at the time. So not all crimes are equal. That's why we punish them differently. And that's why there's different levels of force that are appropriate. If he had believed it was some lesser crime that he was searching for somebody on, then it probably isn't appropriate for him to use that level of force. If you run, there's no way to avoid being slammed up against a car, even if you have submitted and you're not resisting because that's a ruse, or it might be a ruse and you might run again. Well, I believe... Is that the rule? Again, Your Honor, I think that's too broad, and I think in this case-specific context what we're looking at is to the extent that there was a submission, it was for some very You don't think running to your mom in the parking lot and wrapping your arms around her is a sign of submission? At least you're no longer fleeing. Well, you're no longer fleeing, but again, you have to look at it from the officer's point of view. The officer doesn't know who this person is or what that person has done, but he believes it's an armed robbery. And I think that is key, and that distinguishes it from just any situation where you have someone who's fleeing and what level of force is appropriate. He reasonably believed that it was the person who may have just committed this armed robbery with a gun, and I think that's important. Counsel, Judge Guy, would you comment on the durational aspect of this? As I read the record, it seemed like this went on longer than necessary. What's your take on that? Your Honor, there was, like has been pointed out, there were a number of family members surrounding, grabbing at Officer Casimir, screaming in both English and Spanish. Understandably, in hindsight, we know why they were so concerned. But there wasn't other backup on scene. Only Officer Krozan was there, and Officer Casimir didn't feel that the situation was in control until additional officers arrived. And that's when he was finally able to, he felt comfortable getting him off of the car because he knew there were additional officers on scene in the area. I don't think that that kind of a situation would dictate getting him in the car and out of there as quickly as possible. It seemed like the longer they stayed, the worse the situation would get. Well, a couple things, Your Honor. Number one, the car wasn't immediately there. Officer Krozan had the car when Officer Casimir was pursuing on foot. So at the time of the initial stop, there was no car to put him in. In addition, the fact is... I don't know the exact amount of time, Your Honor, but I mean, it was probably a minute or two, maybe. I don't know. I'm sure the record will show. And as soon as the other officer got there, your guy goes on his lapel mic and says it's all clear or whatever it was, stand down. Actually, the all clear didn't come until they had spoken to the witness, Nina Kennedy, who had initially called and said these guys returned the wallet, which is what gave them a lot of the information they were going on. And Nina Kennedy confirmed this was not the suspect in the robbery. Only when the eyewitness came and spoke to them, and actually didn't even speak to those officers, spoke to Officer Carlos Robles and another officer. So you've gone well beyond that. I have, Your Honor. So I'm going to give you your full rebuttal, and why don't we hear from Mr. Screen. Thank you, Your Honor. Thank you, Your Honor. May it please the Court. My name is Don Screen, and I represent the when he characterized Mr. Basefice's argument as a good closing argument for a jury. That's exactly what it was. This case is postured on summary judgment. Judge Wells appropriately denied the defendant's motion for summary judgment based on qualified immunity, based on the existence of numerous issues of material fact. Now, the defendants would purport to accept many of those issues of fact, because I think they recognize that to the extent they're up here arguing facts, this Court lacks jurisdiction even to entertain a qualified immunity appeal. But that being the case, there are certain facts, such as Juan was slammed and tackled against the car that they acknowledge. How about the fact that it does seem like it was a pretty chaotic situation? I mean, so on his side, you have the fact that it was a serious charge, you do have him running, and at the time the officer gets Juan Ortiz, it does sound pretty chaotic. I mean, it doesn't sound like a great situation. So I assume we have to give the officer a little room to work with there. How chaotic was it? What effect did this large and unruly crowd have on the actions of the officers? Is that something that can be decided as a matter of law? I don't believe so. Well, it can be if there's no dispute about how large it was and how ruly or unruly they were. So it seems to me one version of this has, I think your opposing counsel even said that they were grabbing at the officer. Your version is they were just simply trying to explain to him, loudly or otherwise, this kid has special needs. Right. Well, there's no question that... So is there agreement on the facts as to what this crowd was doing, or isn't there? I would say no. There's not an agreement about what they were doing. You didn't concede it was chaos. You didn't concede there was chaos? This is just a lot of people, and no one knew what was going on, and there was anger being directed at the officer? Chaos or unruly are brief writer's characterizations of what was going on. They're not empirical facts. If you look at the testimony, what we have are Juan Ortiz's relatives trying to inform the police officers, they've got the wrong guy, this is my son, he's got Down Syndrome, he couldn't possibly have committed whatever you think he committed. And you have Nina Kennedy, the apartment manager, who's looking out the window at this scene unfolding before her eyes 15 feet away and telling them, no, no, no, that's the wrong guy. And she's the one who had made the report to the police dispatcher, who on no fewer than three occasions informed these very police officers that this red shirt guy that they're supposedly looking for is not the robber. He's the guy who turned in the wallet. So, reasonable mistake? I think not. You've been informed three times by the dispatcher that, okay, be on the lookout for that because he's the one who turned in the wallet. So, armed with this information, they chase down Juan Ortiz simply because he's wearing... He's running. He's running, right. We all know that's indicative of guilt or that's perceived as indicative of guilt. I think that goes to the reasonable suspicion inquiry. That's true. And the judge did agree that that gave rise to reasonable suspicion. But once Juan had been apprehended, the question is what force was applied there and was that objectively reasonable? As your honors have already recognized, once he had surrendered, admittedly, should he have been wrenched from his mother's embrace, tackled and slammed against the car and held there for 15 minutes when he was being informed by numerous persons? What's your response to your friend's argument that sometimes people fake surrendering? In other words, that that's just a ruse to get the officer to relax and then once the officer's relaxed, they march off again or worse, pull a gun. Was Juan attempting to trick Officer Kasmer? Can that be decided as a matter of law? Did Officer Kasmer have a reasonable belief that Juan might try to further evade capture? Was that belief reasonable? Did it justify the excessive force that Officer Kasmer had administered against Juan? Was that proportionate to the risk that Juan might flee again? Plus the fact that Juan had initially fleed tells us nothing about how Juan was behaving at the time the excessive force was administered. By that time, according to Officer Kasmer's own admission, Juan had surrendered and was completely compliant. What about the other officer? That seems like a slightly harder case from your perspective, right? That person is working with somebody. I would think most officers trust their colleagues to be doing the right thing. Whatever force is being applied, I guess I would assume a colleague was doing it for a good reason. So your theory of the case is that Krizan was supposed to intervene and not trust his colleague. First of all, the testimony from all witnesses is clear that Krizan was present for at least part of the encounter. But Krizan wasn't present when he allegedly slammed him up against the car, was he? He was present during at least some of the administration of excessive force. The period of time after he was slammed up against the car. Right. So you can't hold Krizan responsible for not preventing that. Not preventing the slamming or the tackling, but preventing the continued pinning of Juan to the hood of the hot car. If we're going to look for a minute at what happened after he's placed up against the car, is there a suggestion in this record that people were trying to grab this kid away from the police officer or not? There are references in the briefs to bystanders grabbing for Juan and so forth. So if we think about that for just a second, if the bystanders are trying to grab him, would that not in and of itself be the justification for continuing to hold him by virtue of pressing him up against the car? I don't think there's any record evidence, any testimony that persons from the crowd were attempting to extract Juan from the grasp of the police officers. There's suggestions of pawing or reaching in and so forth, but there's no suggestion that they were trying to actually remove Juan from the scene and take him away, wrench him from the embrace of Officer Casmer. If the record does show that they were trying to arrest him away from the police officer, would that put this in a different light, at least with respect to what happened after he's forced up against the car? Excessive force is an objective inquiry. But how could it be objectively unreasonable to hold somebody up against a car if, in fact, it's true they were trying to drag him away? First of all, again, there's no testimony in the record that suggests they were trying to drag him away. So we'll focus in on that. I don't know if that's a hypothetical or if that's just simply a reflection of what the record shows, because I'm less clear about that. But you believe the record does not show any attempt to arrest Juan away from the control of the police officer? That's correct, Your Honor. All right. That's what I wanted. Thank you. Okay. So what this case boils down to, as Judge McKeague, you put in the Rudlath v. Gillespie case, a simple dichotomy emerges. When a suspect actively resists arrest, the police can use force. But when a suspect does not resist, they cannot. That's what this case boils down to. There is no evidence, not a suggestion in the record, that Juan was resisting in any way. The fact that he fled moments earlier does not justify what's happening to him right now. In fact, in the case of Coley v. Lucas County, the court held that you can't use prior conduct to justify what you're now doing to a compliant detainee. That was a case in which the officer had grown frustrated because in the past, the same detainee had resisted, had been violent. And the holding of the court, if you use that to justify what you're doing to him now, it just seems penal, it seems punitive. Judge Guy here, but that really isn't the case here. Actually, running away from an officer who thinks there's been an armed robbery, that in and of itself is a resisting arrest, isn't it? It is at that time. Again, it was unreasonable for the officers to have believed that Juan was a suspect at all, because they had been told three times by the dispatcher that Juan was at most a witness. So, the flight doesn't justify anything that might have happened to him either at that time or at the crucial time when the excessive force was being administered. The question is, was he resisting at that time? Earlier in the argument, you agreed there was reasonable suspicion to chase after him and stop him. I don't agree there's reasonable suspicion. I acknowledge that the judge found that way and granted the officer summary judgment on the reasonable suspicion inquiry. So, you don't even think Casimir had a right to chase him down? I don't think he had a right to believe that he was a suspect in an armed robbery. Okay. That was pretty easy. Well, I mean, they had a right to stop him and question him. As Judge Wells put it, it warranted further investigation, and I would acknowledge it warranted further investigation. The only way they were going to investigate is to chase him down and stop him. And stop him, right. But once he stopped, the only thing at issue in this appeal is what happens after he stops, because that's when the excessive force was administered. The prior flight, there's nothing to justify the force being administered. And there's no reasonable mistake here for a number of reasons. The dispatchers, again, told this is most a witness, not a suspect. And everyone else was telling him, you've got the wrong guy. He's got a disability. He doesn't understand what you're saying. They ignored him. Engaged in racial slurs and told him to F off and go back to your country if you don't speak English. All of which, by the way, is indicative of the bad faith and malicious intent needed to overcome state law immunity. What was the basis of the dispatcher's knowledge telling the officer that he was only a witness? How did the dispatcher know that? The dispatcher had been contacted by Nina Kennedy, who was the apartment manager, to whom the wallet had been engaged, a tall, white gentleman who had turned in the wallet. And that description was relayed in detail to these officers, who therefore should have known who they were looking for. When they found red shirt guy, he wasn't going to be a suspect. He was going to be a witness. Thank you. You're welcome. And the other reason why this is not a reasonable mistake, and I say in my brief, what are they supposedly mistaken about? Expecting to hear that they were mistaken about the kind of force necessary to apprehend the suspect in these circumstances, and that they would have found some support in the case law. What they say is that we thought he was a suspect in an armed robbery. We thought he was the robber. As though you're allowed by the law to administer more force against a guilty suspect than you are The law is clear that both types of suspect should be treated equally the same. The fact that someone turns out to be guilty or innocent does not justify the use of excessive force, which is determined to be excessive objectively. It doesn't matter if the guy turns out to be guilty or innocent. It's still excessive. I'm a little bit confused by this red shirt guy comment, and whatever the dispatcher did or did not tell this police officer. Are you saying that that occurred after he had caught up with Ortiz and put him up against the car or during the chase? Before the chase, actually. They received three separate dispatches before the chase was undertaken by Officer Chrysler. So had he paid attention, he would have known who he was looking for once he caught red shirt guy was not a culprit but a decision about what force was necessary to effect an arrest and do his further investigation. So again, it's an objective inquiry. No reasonable mistake was made here. We're back to Judge McKeague's simple dichotomy. If a suspect is posing no threat to the officers or to anyone else, and if he's not actively resisting arrest, the law is clear that force cannot be used under those circumstances other than that minimal force that might be necessary to ensure that the suspect remains under arrest and doesn't flee. When did he put the cuffs on this kid? The record is unclear about that. The dispatches are unclear about that. What's clear from the dispatch log is that within four minutes of Wands having been apprehended, it was reported that all okay, calming down. Now they want to infer from that that by that time Wands had been released, the handcuffs had been removed. That's completely contradicted by the record. All witnesses testify that Wands remained in handcuffs for a substantial period of time and remained under detention. The period of time being 15 minutes? 15 minutes is the average estimate given by the witnesses, yes. So your argument is that he slams them up against the car, gets the handcuffs on him. There's nothing wrong with actually cuffing him, I suppose, is there? Not if it's done in a professional, non-violent manner, which, by the way, is not the case here. So it's really the length of time that he was also further pressed up against the car after already being restrained in handcuffs that you're primarily focusing on here? That's certainly part of it. The length of the detention was completely unnecessary. By that time it should have become absolutely clear to the officers that they had the wrong guy. Not only were they being told that by everyone on the scene, but they could tell, once they looked at him in the face, this was a disabled, diminutive youngster who could not have possibly committed the crime that was being investigated. And plus, the apartment manager, whose word they ultimately took... Why could he not have committed the crime just because he's diminutive and disabled? It enters into the evaluation of the totality of the circumstances. So that means it's not, could not have, but it's a factor in whether he could have. It certainly, right, it should have entered their thinking. Hmm, do we have the right guy here? Not only are we being told by everybody on the scene, including the apartment manager, Nina Kennedy, whose word they ultimately accepted in releasing Juan, if they listened to her at that time, why not listen to her initially when she was telling them that they have the wrong guy? We have your argument in hand, so thank you very much. Thank you, Your Honors. Thank you. I'd like to touch on two important things here. Nina Kennedy is the big one, but the first one is Alma Perez. This idea of whether or not Juan was ever being grabbed at. Alma Perez admits, that's the mother, she admits that she grabbed at Juan. Now, in terms of what her intentions were, there's no way Officer Casimir could know that at the time. But I think it's reasonable for someone, an officer, to assume that they have a suspect in custody and somebody's grabbing at them that they may be doing it to pull them away from custody. And she admits to that. That is in the record. There is no question about it. Alma Perez. You guys can check that. As far as Nina Kennedy goes, a few things need to be pointed out here. Number one, there's a big distinction between when Nina Kennedy was one of a chorus of people screaming that this guy didn't do it versus when they eventually accept it. And when it's accepted, it's Officer Carlos Robles who interviews her and they only are able to accept her contention once they're able to verify that she was in fact the person who called 911 to report this issue. There was no way for Officer Casimir to do that. He would have had to disengage the suspect, which he couldn't do, and take the time to verify Nina Kennedy's identity. There was no verification as to who she was. It was once they were able to both verify that she was the initial caller, then they could accept her word because there was some indicia of reliability. Prior to that, Officer Casimir had no indicia of reliability as to Nina Kennedy or any of the other chorus of people screaming at him. The idea that what Nina Kennedy called in and therefore what the dispatcher relayed says that the person in the red shirt is not a suspect we completely disagree with. This is a person who was in possession of stolen property within close physical and temporal proximity of the theft. For all we know, the person who returned it could have returned a wallet to somebody with all the cash missing. And I believe, and I'd have to check, but I believe eventually the people who did return that wallet were the people who were arrested for the robbery. So this idea that because the dispatch said, oh, this red shirt guy was the one who returned the wallet, therefore he couldn't be a suspect, I think is completely wrong. And I think that it is a mistake to assume as such. And then I'd just like in my last 40 seconds to remind the standard from Mallee v. Briggs is that qualified immunity protects officers unless they are plainly incompetent or knowingly violate the law. And I think when we look at the totality of the circumstances here, you can't say that Officer Casimir was plainly incompetent or knowingly violated the law. And then very quickly, as to the cursing and the alleged racial slurs, obviously for qualified immunity purposes we can't dispute that. In real life we do. But to the extent they were alleged, I believe they were all alleged. In terms of the racial slurs to Officer Krazan, I believe Officer Casimir was only accused of cursing, but never any racial slurs. I see my time is up if any has a question. I don't think so. So thanks to both of you for your helpful briefs and oral argument. We appreciate it. Thank you. It's always an honor to be here. Thanks to both of you. The case will be submitted.